UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PERFORMANCE PRICING, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC.; AOL LLC; AND MICROSOFT CORP., <br><br> Defendants. | Civil Action No. 2:07-CV-432-LED <br><br> JURY TRIAL REQUESTED |

**DEFENDANTS' JOINT SUR-REPLY BRIEF ON CLAIM CONSTRUCTION**

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFF'S OVERBROAD PDA CONSTRUCTION SHOULD BE REJECTED. .......1

    A. If "Collateral" Is Ambiguous, "PDA" Is Indefinite. ...............................................1

    B. Plaintiff's Interpretation of Its "Other Than Offering or Accepting a Price" Language Shows It Is Without Merit. ....................................................................1

    C. Plaintiff Fails to Rebut That the PDA Must Be Inherently Entertaining. .................1

II. PLAINTIFF'S ARGUMENTS DO NOT ACTUALLY ADDRESS THE SCALING LIMITATION OR REFUTE THAT ITS CONSTRUCTION IS INDEFINITE. ................3

    A. Plaintiff's Focus on Data "Partially" Affecting the Price Is Misleading. ................3

    B. Plaintiff's Construction *Is* Meaningless and Indefinite. .........................................4

III. THE STEPS OF THE ASSERTED CLAIMS MUST BE PERFORMED IN ORDER. .....5

IV. PLAINTIFF IMPROPERLY SEEKS TO ADDRESS DEFICIENCIES IN ITS CONSTRUCTION OF "PDA" THROUGH ITS CONSTRUCTION OF "AUCTION." ................................................................................................................5

Conclusion ................................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Every Penny Counts, Inc. v. Amer. Express Co.*,
    563 F.3d 1378 (Fed. Cir. 2009)..................................................................................6

*GWIN, Inc. v. Don Best Sports*,
    548 F. Supp. 2d 342 (E.D. Tex. 2008) .......................................................................5

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)..................................................................................4

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*,
    307 F.3d 1372 (Fed. Cir. 2002)..................................................................................3

*Voda v. Cordis Corp.*,
    536 F.3d 1311 (Fed. Cir. 2008)..................................................................................3

NOTE ON CITATIONS

1. References to *Plaintiff Performance Pricing Inc.'s Claim Construction Brief* (April 15, 2009) are indicated by the abbreviation "P.O.Br.," followed by the page number being cited. "P.O.Br. 5" therefore refers to page 5 of Plaintiff's Opening brief.

2. References to *Defendants' Joint Response Brief on Claim Construction* (May 15, 2009) are indicated by the abbreviation "D.Br.," followed by the page number being cited. "D.Br. 5" therefore refers to page 5 of Defendants' Response brief.

3. References to *Plaintiff Performance Pricing Inc.'s Reply Claim Construction Brief* (June 8, 2009) are indicated by the abbreviation "P.R.Br.," followed by the page number being cited. "P.R.Br. 5" therefore refers to page 5 of Plaintiff's Reply brief.

4. The patent-in-suit, U.S. Patent. 6,978,253, is attached to the *Declaration of Antonio Sistos* (May 15, 2009) ("Sistos Declaration") as Exhibit 1. References to the patent-in-suit are indicated by column and line number. A reference to "Col. 3:15" therefore means column 3, line 15 of the patent-in-suit.

5. The cited portions of the prosecution history of the patent-in-suit are attached to the Sistos Declaration as Exhibit 2. Citations to individual pages are indicated using document identification numbers (P___).

6. Other exhibits are attached to the Sistos Declaration as Exhibits 3 through 8. Defendants' other exhibits are referred to with the prefix "Ex." followed by the number of the exhibit in question. "Ex. 3" therefore refers to Exhibit 3 of the Sistos Declaration.

In its Reply, Plaintiff provides a myriad of arguments on the terms at issue. Although each of Plaintiff's assertions is refuted by the arguments in Defendants' Response brief, Defendants respectfully submit this Sur-Reply in order to address a few key issues.

## I. PLAINTIFF'S OVERBROAD PDA CONSTRUCTION SHOULD BE REJECTED.

### A. If "Collateral" Is Ambiguous, "PDA" Is Indefinite.

Plaintiff agrees that the intrinsic evidence shows that the PDA must be a collateral activity. (P.O.Br. 5.) Plaintiff, however, argues that the word "collateral" in Defendants' construction should be rejected because it is not "readily understandable." (P.R.Br. 4-5.) If true, then Plaintiff has identified a deficiency in the '253 patent's description of PDA, not Defendants' construction. Defendants are merely using "collateral" just as the '253 patent repeatedly does to describe the PDA. (*See, e.g.*, Abstract; Col. 2:23-25.)

### B. Plaintiff's Interpretation of Its "Other Than Offering or Accepting a Price" Language Shows It Is Without Merit.

In their Response, Defendants pointed to several customary steps in sales transactions such as selecting a product, entering payment information, entering the quantity of products desired, entering a delivery address, and selecting the shipping method that Plaintiff concedes are not "collateral" and are not PDAs. (P.R.Br. 4.) Plaintiff reasons these activities are "offering or accepting a price," and thus not PDAs under Plaintiff's construction, because by engaging in the activity the buyer is implicitly "accepting" that the price will be determined by that activity. (*Id*.) Not only does this fail to comport with the plain meaning of Plaintiff's construction, but it renders it nonsensical. Indeed, Plaintiff's construction also requires that the PDA be used to determine the price. But a PDA cannot be both used and not used to set the price.

### C. Plaintiff Fails to Rebut That the PDA Must Be Inherently Entertaining.

Plaintiff repeatedly argues that the entertainment value of a PDA is not the marketing incentive the '253 patent trumpets as the purported differentiating factor of the patent from the prior art. (P.R.Br. 1, 2, 5.) Instead, notwithstanding clear language in the specification and prosecution history to the contrary, (*see* D.Br. 8-10), Plaintiff asserts the "full and complete

1

marketing incentive" disclosed in the alleged invention is the possibility of a reduced price on a product. (P.R.Br. 10 (emphasis added).) Thus, in an effort to improperly broaden the claims, Plaintiff has essentially reduced the alleged invention of the '253 patent to a discount. This alone demonstrates the specious nature of Plaintiff's interpretation of the patent.

Plaintiff further notes that the applicant stated during prosecution that the PDA is "competitive or entertainment-based." (P.R.Br. 3 (quoting P 00239).) As with the similar language from the specification, however, the applicant's use of "or" merely indicates that the PDA may be entertaining and competitive, or entertaining but not competitive. Indeed, the portion of the prosecution history cited by Plaintiff makes this clear. In this excerpt, the applicant first explained the price is determined during "a competitive or entertainment-based PDA." (P 000239.) Next, using the language "That is" to refer back to the "competitive or entertainment-based PDA," the applicant described the "entertainment value" of the PDA:

> Appellant teaches a *competitive or entertainment-based* price determining activity. (See, e.g., original application, page 1, lines 6-7; page 2, lines 14-16; page, 3, lines 2-4; page 3, lines 10-11; page 4, lines 13-14) Thus, the price of the product is determined during a competitive or entertainment-based PDA. That is, the buyer also receives a side benefit of the entertainment value of the activity or even motor skill enhancement via video game play or similar activities.

(*Id.* (emphasis added).)[1]

Plaintiff's argument that the applicant's statements during prosecution are not a clear and express surrender is a red herring. (P.R.Br. 3.) In the case cited by Plaintiff, the dispute centered on whether the limitation at issue should be construed more narrowly than its plain and ordinary

---

[1] Plaintiff asserts that the applicant did not argue that the "entertainment value" aspect of the PDA distinguished the alleged invention from the prior art because the applicant later stated that there is a direct connection between the PDA and the price. (P.R.Br. 3.) But the applicant's later "direct connection" statement does not negate the applicant's earlier argument. (*See* P 00239.) In fact, the two statements are in accord: the PDA drives sales by offering a possible discount on the price of the product through an entertaining activity.

2

meaning. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1320-21 (Fed. Cir. 2008). Here, the parties agree that "Price Determining-Activity" is a coined term. A coined term has no plain meaning. Therefore, there can be no surrender or disavowal of any plain meaning.[2]

## II. PLAINTIFF'S ARGUMENTS DO NOT ACTUALLY ADDRESS THE SCALING LIMITATION OR REFUTE THAT ITS CONSTRUCTION IS INDEFINITE.

### A. Plaintiff's Focus on Data "Partially" Affecting the Price Is Misleading.

Throughout its Reply, Plaintiff repeatedly argues that Defendants' construction of the "scaling" limitation is inconsistent with the limitation allowing the price to be determined "partially" on data other than the performance of the buyer, such as an auction. Initially, the language regarding "partially" determining the price is a separate limitation from the scaling limitation at issue:



(Claim 1[e].) Contrary to Plaintiff's suggestion, there is no limitation that requires scaling the price "partially" to the performance of the buyer. Instead, while the price charged to the buyer may be impacted by other factors, the patent is clear that the scaling limitation itself is done through reference to the buyer's "performance." Thus, Plaintiff's hand waving that Defendants' construction supposedly does not allow the price to be scaled "partially" to the performance of the buyer is irrelevant.

Moreover, the specification explains how an auction and PDA may be used together in a manner perfectly consistent with Defendants' construction: the PDA may provide a "further discount" to an auction price after the auction is complete. (Col. 4:38-43.) For example, in a

---

[2] *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1372 (Fed. Cir. 2002), cited by Plaintiff, is also inapplicable. In *Inverness*, the court noted that a patent holder cannot argue a broader construction of a term where the applicant acquiesced to an Examiner's reliance on a narrower interpretation in allowing the claims. 309 F.3d at 1380. Here, Plaintiff argues the opposite: that the BPAI's allegedly broader interpretation of PDA should prevail over the applicant's narrower interpretation. (*See* P.R.Br. 3.)

transaction where the price of a Mark McGwire rookie baseball card is based partially on the buyer's participation in an auction and partially on the buyer's performance in the video game PDA described in the specification, (Col. 7:44-49), the buyer may win the auction with a bid of $600. The amount of the discount corresponding to each level of success would simply be subtracted from the winning bid to set the graduated prices just as the specification describes.[3]

### B. Plaintiff's Construction *Is* Meaningless and Indefinite.

Defendants explained how Plaintiff's construction – based on the "result" of the scaling step – would render the patent indefinite because competitors would have to search for one possible result of any "ratio, table or other algorithm" used to set the price of a product to determine whether its system infringes. (D.Br. 21.) In response, Plaintiff claims that a competitor would only need to ask: "holding everything else constant, does increasing B1's performance level result in a lower price?" (P.R.Br. 13.) However, Plaintiff fails to define what comprises "everything else," and further fails to explain why a competitor would not need to consider every potential transaction in developing a system, rather than one potential "B1" transaction as Plaintiff suggests. As Plaintiff does not dispute, "[w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determination are likely to result in different outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008).

---

[3] For example, less than 100,000 points would result in an auction price of $600, minus a discount of $25, for a price of $575, while more than 300,000 points would result in the same $600 auction price, with a discount of $100, for a price of $500. A similar percentage discount could be applied for the percentage discount on the Gateway 2000 computer embodiment Plaintiff erroneously argues is inconsistent with Defendants' construction. (P.R.Br. 7 (citing Col. 8:50-54).) Plaintiff's "example 2" and "example 3," (P.R.Br. 7-8), are the horse racing embodiment Defendants have already shown fits their construction. (D.Br. 14-15 (citing Col. 8:19-22).)

In their Response, Defendants also pointed out that in Plaintiff's construction – as exemplified by its hypothetical formula (P.O.Br. 12) – the price corresponding to the performance of the buyer could be higher than the advertised price. (D.Br. 20 n.15 (citing Col. 2:44-47).) Plaintiff's only response is that the "base price" is not the "advertised price." (P.R.Br. 12.) But even Plaintiff asserts that the "marketing incentive" of the patent is to drive sales through the possibility of a <u>reduced price</u>. (*Id.*, 1, 10.) Plaintiff still does not explain how a PDA where a better performance could increase the "base price" would attract buyers.[4]

## III. THE STEPS OF THE ASSERTED CLAIMS MUST BE PERFORMED IN ORDER.

Plaintiff does not dispute that "method steps implicitly require sequential performance if the claim language, as a matter of logic, requires the steps be performed in the order written." *GWIN, Inc. v. Don Best Sports*, 548 F. Supp. 2d 342, 348 (E.D. Tex. 2008). Instead, Plaintiff concedes that in claim 1, step [b] must occur before step [e], but disputes that step [a] must occur before step [b]. However, even under Plaintiff's constructions of steps [a] and [b], as a matter of logic, a buyer would not – and could not – consent to a binding contract to purchase a product (step [a]) prior to the seller communicating information sufficient to identify the product (step [b]). Accordingly, the steps of claim 1 must be performed in order.

## IV. PLAINTIFF IMPROPERLY SEEKS TO ADDRESS DEFICIENCIES IN ITS CONSTRUCTION OF "PDA" THROUGH ITS CONSTRUCTION OF "AUCTION."

Plaintiff's "an auction is not a PDA" construction is an obvious hedge against Plaintiff's expansive construction of PDA reading on acknowledged prior art. Rather than change its definition of PDA, however, Plaintiff improperly tries to shoehorn an additional limitation into PDA in its definition of auction.

---

[4] Plaintiff's new proposal to replace its "than otherwise would apply" language with "than would have occurred without the performance level" (P.R.Br. 12), does not remedy any of the noted problems with its construction. (*See also* D.Br. 20-21.)

5

Further, contrary to Plaintiff's argument, the inconsistency between Plaintiff's infringement theory and its proposed construction of the term "auction" is absolutely relevant. *See Every Penny Counts, Inc. v. Amer. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (holding that it is proper for the Court to consider "the parties' views about what the claim term means in the context of a concrete transaction involving [the accused] products"). Plaintiff's unwillingness to address this inconsistency head-on is telling.

## Conclusion

Defendants respectfully request that the Court adopt their constructions of the disputed claim terms.

Dated: June 12, 2009

Respectfully submitted,

By: /s/ David A. Perlson
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
 Charles K. Verhoeven
 David A. Perlson
 Jennifer A. Kash
 Antonio R. Sistos
 Emily C. O'Brien
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
charlesverhoeven@quinnemanuel.com
davidperlson@quinnemanuel.com
jenniferkash@quinnemanuel.com
antoniosistos@quinnemanuel.com
emilyobrien@quinnemanuel.com

BECK REDDEN & SECREST, L.L.P.
 David J. Beck
 Michael Ernest Richardson
One Houston Center
1221 McKinney St. Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
jbeck@brsfirm.com
mrichardson@brsfirm.com

Attorneys for Defendants Google Inc. and AOL LLC

By: /s/ Richard A. Cederoth
   Richard A. Cederoth

David T. Pritikin
Richard A. Cederoth
Laura L. Kolb
John W. McBride
Sidley Austin
One South Dearborn St
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: dpritikin@sidley.com
      rcederoth@sidley.com
      lkolb@sidley.com
      jwmcbride@sidley.com

Eric Hugh Findlay
Findlay Craft
6760 Old Jacksonville Hwy
Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com

ATTORNEYS FOR DEFENDANT MICROSOFT CORPORATION

## CERTIFICATE OF SERVICE

      I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 12, 2009.

                                    /s/ David A. Perlson
                                    David A. Perlson