**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **PERFORMANCE PRICING, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:07cv432** |
| | § | |
| **GOOGLE INC., et al.,** | § | **FILED UNDER SEAL** |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Performance Pricing, Inc.'s Motion to Amend Infringement Contentions ("Motion") (Doc. No. 230). Defendants Google Inc. and AOL LLC (collectively, "Defendants") have filed an Opposition to Plaintiff's Motion to Amend Infringement Contentions ("Response") (Doc. No. 234). Plaintiff also filed a Reply to the Motion to Amend Infringement Contentions ("Reply") (Doc. No. 237). Having fully considered the parties' arguments and for the reasons set forth herein, Plaintiff's Motion to Amend Infringement Contentions is **GRANTED**.

**BACKGROUND**

Performance Pricing is asking the Court for leave to amend its Infringement Contentions to add a doctrine of equivalents infringement analysis. On June 26, 2009, Plaintiff served its First Amended Infringement Contentions on Defendants. MOTION at 2. Plaintiff represents that the Amended Contentions did not accuse any new Google products or services of infringement, but did add analysis responding to Google's Supplemental Interrogatory Responses and information

Dockets.Justia.com

provided in a 30(b)(6) deposition addressing the accused systems.[1] *Id*. The Google Supplemental

Interrogatory Response was previously produced on June 10, 2009, and the corresponding 30(b)(6)

deposition took place on June 23, 2009. RESPONSE at 3. On July 15, 2009, the Court issued a

provisional Order (Doc. No. 218) construing disputed claim terms, and on July 29, 2009, Plaintiff

provided Defendants with its further revised Second Amended Infringement Contentions

incorporating the Court's claim construction. *Id*. On August 5, 2009, Google stated that it opposed

the newly served Infringement Contentions, and the Plaintiff filed this Motion on August 12, 2009.

MOTION at 3.

In both of the disputed Amended Infringement Contentions,[2] Performance Pricing disclosed

new infringement theories under the doctrine of equivalents. MOTION at 2; RESPONSE at 2.

Performance Pricing argues that these amendments were necessitated by a new understanding of the

accused product following the June 2009 supplemental Interrogatory Response and the Google

30(b)(6) deposition. MOTION at 2. Defendants argue that the Plaintiff has failed to show good cause

for amendment. RESPONSE at 5–10. Defendants maintain that when Plaintiff provided the Second

Amended Infringement Contentions, it did so under a suspect assertion that the revisions were

necessary to make "clear that its positions tracked the Court's preliminary claim constructions."

RESPONSE at 3–4 (quoting Cho Decl. ¶ 12). Defendants specifically argue that Plaintiff used the

opportunity to amend in order to improperly introduce doctrine of equivalents arguments that could

---

[1] The precise topic of the deposition was a "detailed identification of all facts and documents that address whether Google's Accused Systems include each part of each of the following steps [a through g] from the '253 patent." MOTION at 2 (quoting Cho decl. ¶ 5 as attached to the MOTION as Exh. 2).

[2] According to Performance Pricing's Motion, Google did not believe Plaintiff showed good cause for either the June 26, 2009 or the July 29, 2009 amendments. MOTION at 2–3. Going forward, the Court will address the Second Amended Infringement Contentions (served July 29, 2009) as the basis of this Motion.

have been brought in the Original Infringement Contentions. RESPONSE at 7. In its Reply, Performance Pricing emphasizes that the Plaintiff's amendments are based on newly-discovered facts. REPLY at 2–3.

## LEGAL STANDARD

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). Patent Rule 3-1 requires a party claiming infringement to serve Infringement Contentions on all parties. P.R. 3-1. Leave to amend is required when a plaintiff seeks to amend or supplement the contentions, and a plaintiff must show good cause. P.R. 3-6. When determining whether to grant leave to amend, the Court considers: 1) the explanation for failure to meet the deadline; 2) the importance of the thing that would be excluded; 3) the potential prejudice in allowing the thing that would be excluded; and 4) the availability of a continuance to cure such prejudice. *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

## DISCUSSION

The Court finds that Performance Pricing has shown good cause to amend its Infringement Contentions pursuant to Patent Rule 3-6(b).[3] Plaintiff sufficiently demonstrates in the Motion and Reply briefing that it was not possible to assert the alternative analysis at issue until after Google had disclosed its non-infringement theories. MOTION at 4–5; REPLY at 3 ("Plaintiff's amendments were

---

[3] Performance Pricing initially represents that Plaintiff revised its Amended Infringement Contentions to track the Court's claims constructions under Patent Rule 3-6(a), MOTION at 3, but further argument does not emphasize that amendment is appropriate under that section of the Local Rules. *See generally* REPLY (arguing that amendment is supported by the good cause standard of Patent Rule 3-6(b)). Therefore, the Court will not address amendment under Patent Rule 3-6(a).

the direct result of Google's disclosure of factual contentions available only through discovery."). Performance Pricing's claims that recent discovery provided the bases for its claims against Defendants is reasonable, and furthermore, the Court finds it important for a finder of fact to consider alternative theories of infringement. *See Garmin Ltd. v. TomTom,* 2007 WL 2903843, at*7 (E.D. Tex. 2007).

     *1. The explanation for failure to meet the deadline*

Plaintiff adequately explains its need to amend the Infringement Contentions because Google's Supplemental Interrogatory Responses and the 30(b)(6) deposition testimony presented "newly identified factual contentions" upon which the alternative infringement theory was based. REPLY at 3. Performance Pricing relied on Defendants' newly-disclosed factual contentions and then went about amending its Infringement Contentions to present alternative analysis. *Id*. Plaintiff argues that additional discovery was necessary before adding a doctrine of equivalents claims because the details of how the Google system worked were not clear based on the publicly available materials. MOTION at 5. Specifically, Plaintiff provides an explanation as to how it gained additional insight on the accused product when Google "revealed for the first time theories as to why its accused systems did not literally infringe the patent." MOTION at 2.

In defending its non-infringement theory, Google purportedly disclosed details about the accused system which Performance Pricing used to formulate its doctrine of equivalents analysis. *See* MOTION at 5. The details underlying the accused system which led Plaintiff to amend, focus on the role of landing page in the calculations of Quality Score for ad rank. MOTION at 5; RESPONSE at 8; REPLY at 3. After Google's disclosure, Performance Pricing included new information relating to landing page in its July 29, 2009 amendments, and the Defendants opposed this inclusion by

stating that landing page details were publicly available and should have been included with its Original Infringement Contentions at the outset of the case. *See* RESPONSE at 8–9. Although publicly available materials do reference the relationship between landing page and Quality score, Plaintiff asserts that the publicly available Google website inferred that landing page *does not* affect ad rank, and consequently, Performance Pricing states that it was unaware that landing page *does* affect Quality Score until the 30(b)(6) deposition of Andrew Silverman. MOTION at 5. Defendants respond that the Plaintiff's landing page amendments are misplaced because Performance Pricing was aware of the publicly available the web page that explicitly distinguishes the different role of landing page in a search network versus a content network: "the same web page cited by Plaintiff on this point explicitly states that landing page is not a factor in ranking on the search network, but is a factor in ranking on the content network." RESPONSE at 8.

Further explanation of the dispute, however, persuades the Court that Plaintiff made a diligent review of publicly available web resources and did not ignore publicly available information in the Original Infringement Contentions. In its Reply briefing, Performance Pricing characterizes its well-founded difficulty in determining how landing page was used in computing multiple Quality Scores.[4] REPLY at 3. The role of landing page in the accused systems was not clarified until the June 23, 2009 Google 30(b)(6) deposition, and the Infringement Contentions were amended shortly thereafter. Thus, the Court finds that any resulting discrepancies regarding the landing page are not

---

[4] Specifically, the Reply states that the initial information that Plaintiff analyzed from publicly available materials and Google documents suggested that landing page *was not used* in the Quality Score to determine price, but *was used* for Quality Score only when determining minimum bid price. Additional discovery in the form of 30(b)(6) deposition testimony, however, first concluded (June 23, 2009) that landing score *was used* in the Quality Score for price determination, but later concluded (August 20, 2009) that landing page *is not a factor* in price determination. REPLY at 3.Accordingly, the role of landing page in Quality Score determination is not only conflicting, but also unresolved.

the result of Plaintiff's failure to diligently review publicly available information, but a lack of clarity surrounding facts underlying the accused Google process. *See* RESPONSE at 9; REPLY at 3.

As such, Performance Pricing has demonstrated that it did not unreasonably delay in supplementing the Amended Infringement Contentions on July 29, 2009. The alternative theory of infringement was fully developed and served on Defendants within approximately one month of the factual contentions provided by Google during the month of June. The facts disclosed by Google to establish its non-infringement position contemporaneously identified grounds for Plaintiff's alternative infringement theory and Plaintiff should not be precluded from amending due to late factual disclosures on the accused Google system.[5] Therefore, the Court finds that Performance Pricing acted with sufficient diligence to show good cause. *See Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06cv434, 2009 WL 166555 (E.D. Tex. Jan. 16, 2009); *MacLean-Fogg Co. v. Eaton Corp.*, No. 2:07-cv-472, 2008 WL 4601476 (E.D. Tex. Oct. 6, 2008).

### 2. *The importance of the thing that would be excluded*

The new information Performance Pricing sought to add in formulating infringement theories will promote accuracy in fully representing to a jury the entirety of Plaintiff's good faith infringement claims against the accused products. Performance Pricing has established that the new information is relevant to its theory of infringement and the good cause standard operates to allow amendment of infringement theories in light of newly-produced information. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (noting that the goal of patent rules is to "balance

---

[5] Plaintiff contends that it fully incorporated the Google disclosures as a direct result of factual contentions only made available through discovery: "Plaintiff amended its infringement contentions based on these newly identified factual contentions by (i) citing evidence to rebut Google's facts, or (ii) assuming Defendants' factual contentions were true in setting forth alternative infringement analyses based on those assumed facts, or (iii) both." REPLY at 3.

the right to develop new information in discovery with the need for certainty as to the legal theories");

*Garmin*, 2007 WL 2903843, at \*7 (granting Plaintiff an opportunity to amend infringement

contentions in light of new information about the accused products). The doctrine of equivalents

theory added to the Plaintiff's Amended Infringement Contentions will allow Performance Pricing

an opportunity to convince a jury that Defendants' products are substantially equivalent instead of

identical to the '253 patent claims. As these allegations would provide an alternate means of

infringement, they are important. *Garmin*, 2007 WL 2903843, at \*7.[6]

> *3. The potential prejudice in allowing the thing that would be excluded*

As Defendants point out, prejudice is significantly lessened when amendment occurs prior

to the *Markman* hearing. RESPONSE at 11–12. While a claim construction opinion has already been

issued (Doc. No. 231), this case is not scheduled to go to trial until April 2010. The Court is aware

that Defendants are relying upon the Plaintiff's Infringement Contentions to file dispositive motions,

*id*. at 11, but the potential prejudice Defendants face must be weighed in light of the case as a whole

and the preceding discovery disputes that necessitated the Court's involvement. To that end,

Performance Pricing points out that it was Google's delay in providing interrogatory responses and

30(b)(6) deposition testimony in January – March 2009 that caused the late disclosure of the

information on which these amendments are premised. MOTION at 1–2. Had the parties previously

agreed on discovery requests, and not sought the Court's intervention, *see* Court's ORDER TO

---

[6] Defendants states in its Opposition Brief that the *Garmin* Court allowed amendment because of the "unique circumstances" of the newly-acquired source code. 2007 WL 2903843, at \*7. According to Defendants' reading of this case, it "in now way suggested that adding any alternative theory of infringement is important enough to justify amending contentions in any case." RESPONSE at 11 n.4. Defendants overstate the holding of this case. In the *Garmin* analysis considering the importance of amendment, the Court found an alternate infringement theory to be an important consideration. 2007 WL 2903843, at \*7 ("As these allegations would give Garmin an alternate means to prove infringement, they are important.").

COMPEL (Doc. No. 194), this particular dispute might have been resolved much earlier in the case. *MacLean-Fogg*, 2008 WL 4601476, at \*2.

Under the current circumstances, Defendants have been on notice of the Second Amended Infringement Contentions since July 29, 2009 and will have over eight months to prepare to defend against these theories at trial. In terms of Defendants' expert report on invalidity, which Defendants state is due within the month, RESPONSE at 12, the Court notes that Defendants are not precluded from seeking an extension. If today's ruling presents an undue burden on Defendants' expert, the Court encourages the parties to meet and confer as to the possibility of a jointly agreed upon extension.

> 4. *The availability of a continuance to cure prejudice*

In concurrence with the submissions of both parties, the Court finds that a continuance is not appropriate.

## CONCLUSION

Therefore, with good cause shown, the Court **GRANTS** Plaintiff's Motion to Amend Infringement Contentions (Doc. No. 230).

**So ORDERED and SIGNED this 15th day of September, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE