

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Jennifer A. Kash (Bar No. 203679)
  jenniferkash@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Defendant Google Inc. and
AOL LLC

DOVEL & LUNER LLP
  Greg Dovel (Bar No. 135387)
  greg@dovellaw.com
  Christin Cho (Bar No. 238173)
  christen@dovellaw.com
201 Santa Monica Boulevard, Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Attorneys for Neal Cohen and Vista IP
Law Group, LLP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFORMANCE PRICING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE INC. and AOL LLC, <br><br> Defendants. | **CV09 -6283 GAF (CTx)** <br><br> **DISCOVERY MATTER** <br><br> **JOINT STIPULATION REGARDING DEFENDANT GOOGLE INC. AND AOL LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THIRD PARTIES NEAL COHEN AND VISTA IP LAW GROUP, LLP** |

01002.51305/3060451.1

# TABLE OF CONTENTS

Page

DEFENDANTS' PRELIMINARY STATEMENT .................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

I.  COHEN'S FIRST FOUR PRIVILEGE LOGS CONTAINED·
    IMPROPER ASSERTIONS OF WORK PRODUCT PROTECTION. ........... 2

II. COHEN ADDS NEW ATTORNEY-CLIENT PRIVILEGE CLAIMS
    AND REMOVES WORK PRODUCT PROTECTION CLAIMS. ................... 3

LOCAL RULE 37-1 PRE-FILING CONFERENCE OF COUNSEL ......................... 4

COHEN'S INTRODUCTORY STATEMENT ..................................................... 4

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 4

ARGUMENT .............................................................................................. 6

I.  COHEN'S PRIVILEGE LOG ENTRIES AT ISSUE ...................................... 6

II. DEFENDANTS' POSITION ..................................................................... 6

    A.  Law demonstrates that the Court should grant Defendants'
        motion to compel the production of documents. ....................... 6

    B.  Cohen waived attorney-client privilege for a number of
        documents by failing to expressly claim it, only to claim it later
        to mask improper claims of work product protection. ............... 8

    C.  Withholding documents does not preserve privilege, where that
        privilege is not expressly claimed. .......................................... 10

    D.  Defendants' proposal to resolve the issue at the conference of
        counsel. ................................................................................. 10

III. COHEN'S POSITION ............................................................................. 11

    A.  Controlling Ninth Circuit law. ................................................. 11

        1.  The objections here enable the litigant and the court to
            evaluate the claim of privilege. ........................................ 12

        2.  The timeliness of the objection and accompanying
            information weigh against waiver. ..................................... 12

        3.  The size of the production weighs against finding waiver. ....... 15

        4.  The other circumstances weigh against waiver. .................. 15

1 DEFENDANTS' CONCLUSION..................................................................................16

2 COHEN'S CONCLUSION.....................................................................................16

3 APPENDIX.................................................................................................18

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

01002.51305/3060451.1

1    Pursuant to Fed. R. Civ. P. 37 (a) and Local Rule 37-2.1, Defendants Google
2    Inc. and AOL LLC ("Defendants") and Third Parties Neal Cohen and Vista IP Law
3    Group, LLP ( collectively "Cohen") submit the following joint stipulation regarding
4    Defendants' Motion to Compel Production of Documents by Cohen.

**DEFENDANTS' PRELIMINARY STATEMENT**

6        Courts have held that the failure to expressly make a claim of privilege results
7    in the waiver of that privilege, in particular where the addition of a claim of
8    attorney-client privilege or work product protection is made to avoid the production
9    of documents. This is exactly what happened here. For the documents at issue in
10   this motion, Cohen either raised for the first time, or re-raised claims of attorney-
11   client privilege after previously dropping them, only after Defendants had objected
12   to Cohen's improper work product claims. This conduct—plainly aimed to avoid
13   production of documents with a tardy claim of privilege—waived any attorney-
14   client privilege because Cohen was required to claim that privilege consistently, and
15   at the outset. Cohen should be required to produce these documents for which
16   attorney-client privilege was waived.

**Factual and Procedural Background**

18       On September 27, 2007, Performance Pricing, Inc. brought a patent
19   infringement action in the Eastern District of Texas against Defendants.[1]
20   Performance Pricing, Inc. is a subsidiary of Acacia Patent Acquisition Corporation,
21   which is itself a subsidiary of Acacia Research Corporation, created by Acacia in
22   order to license and enforce the patent-at-issue. Performance Pricing alleges that
23   Defendants infringe various claims of United States Patent No. 6,978,253, titled
24   "Systems and Methods for Transacting Business Over A Global Communications

---

[1]   Plaintiff also brought claims in this action against A9.com, Inc., Yahoo! Inc.,
Microsoft Corporation, and IAC Search & Media, Inc. All other defendants have
since been dismissed.

1  Network Such as the Internet." U.S. Patent No. 6,978,253 issued to named inventor
2  Wayne Lin on December 20, 2005. Neal Cohen prosecuted the patent.

3  **I.  COHEN'S FIRST FOUR PRIVILEGE LOGS CONTAINED
4      IMPROPER ASSERTIONS OF WORK PRODUCT PROTECTION.**

5          On October 22, 2008, Defendants served subpoenas on Mr. Cohen and his
6  law firm, Vista IP Law Group, LLP. (Declaration of Emily C. O'Brien ("O'Brien
7  Dec."), Exs. A-B.) On November 7, 2008, Neal Cohen and Vista (collectively
8  "Cohen") submitted a joint privilege log for documents withheld from production.
9  (*Id.*, Ex. C.) This log had several deficiencies, including lumping multiple
10  documents into a single entry. (*Id.*) Cohen also asserted work product protection
11  for every entry in the log even though the log provided no suggestion these
12  documents were prepared in anticipation of litigation. (*Id.*)

13          On November 25, 2008, Defendants requested that Cohen address these and
14  other privilege log deficiencies. (*Id.*, Ex. D.) On January 9, 2009, Plaintiff's
15  counsel served a supplemental Cohen privilege log that continued to improperly
16  claim work product protection for all documents, with no information regarding the
17  specific litigation for which these documents were allegedly created. (*Id.*, Ex. E.)

18          Defendants then took the deposition of Mr. Cohen on February 11. (*Id.*, Ex.
19  F.) Cohen admitted that he was not aware of <u>any</u> specific anticipated litigation
20  during the prosecution of the patent-at-issue and that he had not done any work on
21  any litigation for Mr. Lin other than appearing at the deposition. (*Id.* at 21:5-9,
22  22:1-20.)

23          After Mr. Cohen's deposition, Plaintiff's counsel assured Defendants that a
24  third privilege log would address the improper designation of documents as
25  protected under the work product doctrine. (*Id.*, Ex. G at 2) It did not. Cohen's
26  only concession was to remove the improper assertion of work product from three
27  documents, and replace it with claims of attorney-client privilege for two of those
28  documents. (*Id.*, Ex. H at 26.) At the same time, he added belated claims of

1　attorney-client privilege for some documents, and removed attorney-client privilege
2　for other documents. (*Id.*, at 6, 14-15.)

3　　　After Defendants again complained regarding Cohen's improper work product
4　assertion, Plaintiff's counsel provided a fourth log with nine documents that had
5　previously been withheld removed and produced. (*Id.*, Ex. I; Ex. J at 21, 35-6.)

6　**II.　COHEN ADDS NEW ATTORNEY-CLIENT PRIVILEGE CLAIMS
7　　　　AND REMOVES WORK PRODUCT PROTECTION CLAIMS.**

8　　　On May 18, Plaintiff's counsel produced yet another revised Cohen privilege
9　log. (*Id.*, Ex. K.) For all documents in the fourth privilege log where he had only
10　claimed work product protection, Cohen added <u>new</u> claims of attorney-client
11　privilege, or re-raised claims previously withdrawn, in his fifth privilege log. (*See,*
12　*e.g., id.* at 14-15, 17, 24-5, 27-8, 31, 35-6.) He simultaneously removed claims of
13　work product protection for many of these documents. (*Id.*) However, Cohen
14　continued to claim work product protection for other documents that were not
15　entitled to the protection. (*See, e.g., id.* at 6, 16-18, 20, 31.)

16　　　Defendants' counsel responded to this revised log on May 22, pointing out the
17　privilege log's continued deficiencies, including the continuing improper assertions
18　of work product protection. (*Id.*, Ex. L.) On May 29, Plaintiff's counsel produced
19　yet another revised Cohen privilege log. (*Id.*, Ex. M.) In that sixth log, Cohen
20　removed his assertion of work product protection for all documents except for one,
21　but maintained his claims of attorney-client privilege. (*Id.*)

22　　　Defendants' counsel and Plaintiff's counsel conducted a meet and confer on
23　June 4, and Defendants followed up by letter on June 8. (*Id.*, Ex. N.) Defendants
24　indicated that attorney-client privilege had been waived for all documents where
25　Cohen had failed to timely assert the privilege in earlier logs, or had removed and
26　then tried to reclaim the attorney-client privilege. Defendants demanded production
27　of all documents where attorney-client privilege had been waived. (*Id.*) Plaintiff's
28　counsel refused.

On June 12, Plaintiff's counsel produced one additional document and served a seventh Cohen privilege log that continued to assert attorney-client privilege for documents where the privilege was waived. (*Id.*, Ex. O.) The parties were thus at an impasse regarding this issue.

### Local Rule 37-1 Pre-filing Conference of Counsel

Pursuant to Local Rule 37-1, the parties conducted a pre-filing conference of counsel by letter (June 8, 2009) and telephonically (June 4, 2009). (*Id.*, Ex. N.)

## COHEN'S INTRODUCTORY STATEMENT

### Factual and Procedural Background

The subject of this litigation is U.S. Patent No. 6,978,253 (the '253 patent), which describes a method for "conducting business transactions over the Internet, allowing buyers to reduce the price of the selected product/service based on the buyer's performance during a collateral activity." Plaintiff Performance Pricing, which is the exclusive licensee with all substantial rights in the invention, asserts that Google's AdWords system infringes the '253 patent.

Neal Cohen is an attorney with Vista IP Law Group. His practice includes both patent prosecution and litigation. He was hired by Wayne Lin, the inventor of the '253 patent, to prosecute the '253 patent. In addition to prosecuting the patent, Mr. Lin also consulted with Mr. Cohen regarding litigating the patent claims against infringers, including specifically against Google. *See* exh. F at 21:10-18, 22:5-20 (stating that work done for Lin included work done "in anticipation of some litigation").

On October 22, 2008, Defendants served subpoenas on Mr. Cohen and Vista IP Law Group (collectively "Cohen"). Mr. Cohen and Vista timely submitted a joint privilege log that listed each document withheld from production. The log listed the dates of the documents (with the exception of certain documents that had multiple dates), the author(s), the recipient(s), a description of the documents, and the privilege(s) claimed. *See* exh. C. The documents were not listed separately, but

1 | instead listed in groups for the folders under which they were found. *Id.* Ninety-
2 | seven document folders were listed in the log.

3 | On November 25, 2008, Defendants requested that Cohen supplement his
4 | privilege log with additional information, claiming that the descriptions in the log
5 | were inadequate. Cohen timely supplemented the log. *See* exh. E.

6 | On February 11, 2009, Defendants took the deposition of Mr. Cohen. During
7 | that deposition, Mr. Cohen stated that he had done work for Mr. Lin "in anticipation
8 | of litigation" and that he had documents which were "prepared in anticipation of
9 | litigation." Exh. F at 21:10-18, 22:5-12; *see also* exh. F at 22:15-20 (stating that
10 | work was done "in anticipation of some litigation"); exh. 1 at 196-197 (stating that
11 | Cohen was consulted with regard to litigation against specific parties).

12 | Following the deposition, Defendants again requested a revision of the Cohen
13 | privilege log. They insisted that each document be logged separately (instead of
14 | grouped in folders as they previously were), and claimed that work product had been
15 | improperly asserted. The Cohen log was revised to add a separate entry for each
16 | document as requested by Defendants. *See* Exh. H. In addition, each entry was
17 | reviewed to check for errors.

18 | This pattern repeated itself several times, with Defendants insisting that the
19 | Cohen log was deficient, and Cohen attempting to revise the log to Defendants'
20 | satisfaction. During the process of revisions, some errors in the claim of privilege
21 | were found, and revised. Of the approximately 300 documents logged, 11 non-
22 | privileged documents were found to be inadvertently logged as privileged, and those
23 | documents were produced. Defs. at 4:3-5; Defs. at 5:1; Exh. I and J. In addition,
24 | some attorney-client privileged documents were found to have been incorrectly
25 | logged as "work product," and vice versa. Those mistakes were corrected, and a
26 | new privilege log was produced. *See, e.g.,* Exh. K and M.

27 | Defendants suggest throughout their motion that Cohen improperly asserted
28 | work product, but the facts show otherwise. Mr. Lin anticipated suing Google and

1  other infringers of the '253 patent, and consulted with Mr. Cohen as litigation
2  counsel. Mr. Cohen repeatedly asserted in his deposition that he worked for Mr.
3  Cohen "in anticipation of some litigation," and asserted work product based on that
4  relationship. *See* exh. F at 21: 10-18, 22:5-12, 22:15-20 (stating that work done for
5  Lin was done "in anticipation of some litigation"); exh. 1 at 196-197 (stating that he
6  had knowledge of a specific litigation). Significantly, Defendants do not challenge
7  any of the work product designations in the Cohen privilege log. *See* Defs. position.
8  Thus, the only issue before this Court is Defendants' challenge to assertion of the
9  attorney-client privilege.

10  ## ARGUMENT

11  Set forth below is a list of the Cohen privilege log entries at issue, followed
12  by the parties' contentions as to these entries, including a statement of how each
13  party proposed to resolve the dispute over that issue at the conference of counsel.
14  Due to the size of the privilege log entries, the full text of each entry is provided in
15  the Appendix at the end of this stipulation.

16  **I.  COHEN'S PRIVILEGE LOG ENTRIES AT ISSUE**

17  Privilege log entries 1-27, 2-5, 2-6, 2-11, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 9-1,
18  9-2, 10-1, 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 11-9, 26-4, 26-5, 26-6-7, 26-8-9, 26-
19  10-11, 26-12-14, 26-15-16, 26-17-18, 26-19-18, 26-20, 29-1, 29-2, 30-1, 30-2, 30-3,
20  30-4, 30-5, 30-6-7, 30-10-11, 30-14, 30-15, 30-16, 30-17-19, 30-20, 30-21, 30-22-
21  23, 30-24, 30-25-26, 30-27-32, 30-33-34, 30-35, 30-36-37, 30-38, 30-39-40, 43, 72
22  and 80.

23  **II.  DEFENDANTS' POSITION**

24      A.  <u>**Law demonstrates that the Court should grant Defendants' motion**
        **to compel the production of documents.**</u>
25

26  Federal Rule of Civil Procedure Rule 26(b)(5) requires that a party asserting a
27  privilege or protection "make the claim expressly". The Advisory Committee Notes
28  to the 1993 Amendments of Rule 26 state that a party's failure to notify other parties

1 that it is withholding documents because of an assertion of a privilege or work
2 product protection "may be viewed as a waiver of the privilege or protection." Fed.
3 R. Civ. P. 26, Advisory Committee Notes, 1993 Amendment, reprinted in
4 Thomson/West, United States Code Annotated Title 28 Federal Rules of Civil
5 Procedure, at 37 (West 2008 Supp.).

6       Courts have held that the failure to expressly make a claim of privilege results
7 in the waiver of that privilege, even where documents have not been produced, in
8 particular where the addition of a claim of attorney-client privilege or work product
9 protection is made to avoid the production of documents. *See Lockheed Martin*
10 *Corp. v. L-3 Comm'ns Corp.*, No. 05-1580, 2007 WL 2209250, *7 (M.D. Fla. July
11 29, 2007).

12       For example, in *Lockheed Martin*, Plaintiff served original and supplemental
13 privilege logs in which it claimed only work product protection over a number of
14 documents. *Lockheed Martin*, 2007 WL 2209250 at *6. Defendants filed a motion
15 to compel production of these documents. In response to the motion to compel,
16 Lockheed served a new privilege log that, for the first time, claimed attorney-client
17 privilege over those same documents. *Id.* at * 6 and n. 1. The Court found that
18 Lockheed had "waived its assertions of the attorney-client privilege in the present
19 case by failing to state them expressly in its original and supplemental privilege
20 logs." *Id.* at *7.

21      Similarly, in *In re Honeywell* the Court found Honeywell to have waived its
22 claims of attorney work product by not raising them until <u>after</u> Plaintiffs had moved
23 to compel the production of documents previously withheld on grounds of attorney-
24 client privilege. *In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293 (S.D.N.Y.
25 2003). The Court recognized that "parties should not be permitted to re-engineer
26 their privilege logs to align their privilege assertions with their legal arguments . . .
27 Such a practice undermines the very purpose of privilege logs, and promotes the
28

1  kind of gamesmanship that courts discourage in discovery." *In re Honeywell*, 230

2  F.R.D. 293 at 299-300.

3  **B.  Cohen waived attorney-client privilege for a number of documents by failing to expressly claim it, only to claim it later to mask improper claims of work product protection.**

5  As in *Lockheed* and *Honeywell*, Cohen's tardy assertions of attorney-client

6  privilege are nothing but a transparent effort to avoid producing three sets of

7  documents. Over the course of many months, Defendants objected to Cohen's

8  claims of work product protection for a number of documents, including related to

9  the prosecution of the patent-at-issue. Cohen failed to resolve this issue, despite

10  multiple iterations of his privilege log. Then, having finally admitted after months

11  of dispute that his documents were not entitled to work product protection, Cohen

12  belatedly asserted attorney-client privilege for all but one of these documents.

13  The documents for which Cohen made tardy claims of attorney-client

14  privilege fall into the following three categories:

15  •  Category 1: (Documents 43, 72, and 80): Cohen failed to assert

16  attorney-client privilege in his first four logs and did so for first time in

17  his fifth log, six months after his first log and only after Defendants

18  complained regarding Cohen's improper work product assertions,

19  which he simultaneously dropped in his fifth log. (O'Brien Dec., Ex. C

20  at 5-6; Ex. F at 9, 16-17; Ex. J at 30, 35-6; Ex. K at 31, 35-6.)

21  •  Category 2: (Documents 1-27, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 9-1, 9-

22  2, 11-9, 26-4, 26-5, 26-6-7, 26-8-9, 26-10-11, 26-12-14, 26-15-16, 26-

23  17-18, 26-19-18, 26-20, 30-1, 30-2, 30-3, 30-4, 30-5, 30-6-7, 30-10-11,

24  30-14, 30-15, 30-16, 30-17-19, 30-20, 30-21, 30-22-23, 30-24, 30-25-

25  26, 30-27-32, 30-33-34, 30-35, 30-36-37, 30-38, 30-39-40): These

26  documents were initially in entries for which Cohen claimed attorney-

27  client privilege for a large group of documents. (*Id.*, Ex. C at 2, 4.)

28  After Defendants objected to this improper grouping, Cohen produced

1  his third privilege log, which logged each document separately. (*Id.*,
2  Ex. J.) This third privilege log did not assert attorney-client privilege
3  for <u>any</u> of these documents, but did assert work product protection.
4  (*Id.*, Ex. H at 6, 13-14, 16, 23-24, 26-27.) Cohen then only asserted
5  attorney-client privilege for one of these documents in his fourth log.
6  (*Id.*, Ex. J at 7.) After Defendants continued to point out the improper
7  nature of the work product claims, he then reasserted attorney-client
8  privilege for the remainder of these documents in his fifth log. (*Id.*, Ex.
9  K at 14-15, 17, 24-5, 27-8.)

10  • <u>Category 3:</u> (entries 2-5, 2-6, 2-11, 10-1, 10-2, 10-3, 10-4, 10-5, 10-6,
11  10-7, 29-1, 29-2): For these documents, Cohen failed to assert
12  attorney-client privilege in his original and second privilege log. (*Id.*,
13  Ex. C at 2, 4; Ex. E at 1-2, 6.) After Defendants complained that
14  Cohen's assertions of work product protection were improper, Plaintiff
15  added or substituted claims of attorney-client privilege for these
16  documents for the first time in his third privilege log, served almost
17  five months after the original privilege log. (*Id.*, Ex. H at 6, 14-15, 26.)

18  It is clear for each of these categories that Cohen only added claims of
19  attorney-client privilege after Defendants objected that Cohen's documents were not
20  entitled to work product protection. For all but one of the first and second set of
21  documents, this addition of attorney-client privilege came at the same time Cohen
22  withdrew his improper work product protection claims. For the third set of
23  documents, this addition came somewhat earlier, but still four months after
24  Defendants first objected to Cohen's claims of work product immunity, and one
25  month after Cohen's deposition, where Defendants made clear that his claims of
26  work product protection were improper. Cohen should not be allowed to re-
27  engineer his privilege log in response to Defendants' legal arguments and objections.
28  Instead, Cohen should be precluded from asserting attorney-client privilege for all

1  documents where he did not expressly claim it or where he withdrew only to later
2  reassert those claims. *See In re Honeywell*, 230 F.R.D. 293 at 299-300.

3  **C.    Withholding documents does not preserve privilege, where that**
        **privilege is not expressly claimed.**
4

5       Plaintiff's counsel claims that Cohen did not waive attorney-client privilege
6  because the documents have not yet been produced. (O'Brien Dec., ¶ 15.) This is
7  inaccurate. Cohen had a duty to assert attorney-client privilege for all documents
8  that he alleged were so protected. Cohen's original and revised privilege logs
9  contained many documents for which he alleged privilege as attorney-client
10 communications. Cohen chose to not allege attorney-client privilege, and to
11 withdraw claims of attorney-client privilege, for the documents-at-issue. He cannot
12 now claim privilege that he has failed to properly assert simply because the
13 documents have not yet been produced.

14      In *In re Honeywell*, the Court found that Honeywell had waived its claim of
15 work product protection by failing to assert it in its initial privilege logs. 230 F.R.D.
16 293 at 299-300. The Court ordered the production of all documents for which
17 Honeywell had waived work product protection, even though Honeywell had
18 previously withheld these documents. *Id.* Similarly, Cohen should be ordered to
19 produce all documents for which he did not properly claim attorney-client privilege.
20 Cohen's withholding of those documents does not protect him from having waived
21 the privilege. These documents should therefore be produced.

22 **D.    Defendants' proposal to resolve the issue at the conference of**
       **counsel.**
23

24      At the June 4, 2009 conference of counsel, Defendants requested that Cohen
25 produce all documents for which attorney-client privilege had been waived.
26 Plaintiff's counsel refused, necessitating this Motion to Compel.
27
28

01002.51305/3060451.1

## III.  COHEN'S POSITION

### A.  Controlling Ninth Circuit law.

The controlling Ninth Circuit law rejects any per se rule in assessing waiver of privileges. Instead, in assessing waiver, "a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005); *Tibble v. Edison Int'l*, 2008 U.S. Dist. LEXIS 106999, 5-7 (C.D. Cal. Dec. 30, 2008) (finding no waiver under the circumstances).

Defendants make no attempt to apply the controlling legal standard. Instead, their position rests entirely on two out of circuit district court opinions that do not address, much less apply, the controlling law.[2]

Defendants motion must be denied because all of the factors identified by the Ninth Circuit weigh against waiver. Each of these factors is addressed in turn below.

---

[2] For example, the *Honeywell* case cited by Defendants rested on a local rule in the Southern District of New York, "S.D.N.Y. Civil Rule 46(e)(1) . . . which provide[d] that 'any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived,'" which the court interpreted as a *per se* rule. *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003).

## 1. The objections here enable the litigant and the court to evaluate the claim of privilege.

*First*, the Cohen log enables "the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged." *See Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

Exhibit O, for example, clearly states the document number, the date of the document, the author(s), recipient(s), descriptions of the documents, and the privileges claimed. Exh. O; *see also* exh. M, exh. K, exh. H, exh. E, and exh. C. In addition, the first page of the log contains a list that makes clear the relationships between the relevant persons listed. *See, e.g.* exh. O (stating that Jocelyn Lee, for example, is a senior paralegal at Vista IP Law Group). Based on this information, Defendants have ample information to assess whether the documents at issue are privileged.

In addition, to the extent that Defendants have argued that the original Cohen log was necessarily deficient because it grouped the documents by file, rather than document-by-document, that argument fails because it has been rejected by this Court. *See Moreno v. Baca*, 2007 U.S. Dist. LEXIS 15432, *4 n. 1 (C.D. Cal. Feb. 16, 2007) (no requirement of document-by-document listing); *see also Imperial Corporation of America v. Durkin*, 174 F.R.D. 475, 478 (S.D. Cal. 1997).

## 2. The timeliness of the objection and accompanying information weigh against waiver.

*Second*, the timeliness of the objection and the accompanying information weigh against waiver. *See Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (timeliness of the objections is a factor).

It is undisputed that the original Cohen log was timely served. In particular, the very first privilege log served by Cohen asserted the attorney-client privilege

01002.51305/3060451.1

1  against nearly all of the documents now in dispute.  In addition, to the extent that
2  Cohen's log contained errors, Cohen made timely corrections in a good faith attempt
3  to cure any inaccuracies.  Cohen repeatedly supplemented the log each time that the
4  Defendants requested more information in a good faith attempt to cure, which
5  weighs against finding waiver.  *See EEOC v. Safeway Store, Inc.*, 2002 U.S. Dist.
6  LEXIS 25200, 7-8 (N.D. Cal. Sept. 16, 2002) ("an improper blanket assertion of
7  privilege might be excused if the defendant had taken the time to correct its error
8  prior to the discovery hearing on the issue" (alterations and internal quotation marks
9  omitted) (*quoting Eureka Financial Corp. v. Hartford Acci. & Indem. Co.*, 136
10  F.R.D. 179, 184 (E.D. Cal. 1991)).

11       Moreover, Defendants stipulated to, and the court in which the action is
12  pending entered, a protective order stating that even where a mistake is made and a
13  privileged document is inadvertently produced, "no waiver of privilege" results.  *See*
14  Cho decl. ¶3; exh. 2 at 19, ¶29 ("If any party inadvertently or unintentionally
15  produces materials protected under the attorney-client privilege, work product
16  immunity, or other privilege, doctrine, right, or immunity, any holder of that
17  privilege, right, or immunity may obtain the return of those materials by notifying
18  the recipient(s) promptly after the discovery of the inadvertent or unintentional
19  production and providing a privilege log for the inadvertently or unintentionally
20  produced materials.").  This provision governs Defendants as well as any third party
21  producing information in response to a subpoena in the litigation, and any holder of
22  a privilege.  Exh. 2 at 2 ¶1 (stating that the provisions relating to confidential
23  information apply to "information or material produced for or disclosed to a
24  receiving party that a producing party, including any party to this action and <u>any</u>
25  <u>non-party producing information</u> or material voluntarily or pursuant to a subpoena
26  or a court order . . ." (emphasis added)).  Therefore, this provision *extends* the time
27  period for expressly asserting a privilege and allows a privilege to be asserted even
28  *after* inadvertent production of a document.  Accordingly, a good-faith and timely

1  correction of the privilege log is sufficient. Here, the challenged documents were
2  mis-logged, but never produced, and the error was promptly corrected. Thus,
3  waiver is inappropriate.

4  Finally, even without a protective order that expressly allowed for the
5  clawback of inadvertently produced documents, California courts applying the Ninth
6  Circuit law have found no waiver even where the errors in the privilege log were
7  considerably more severe and a corrected log was served six months later. In *EEOC*
8  *v. Safeway Store*, Safeway responded to a discovery request with a boilerplate
9  objection based on the attorney client privilege and/or work product (without
10 specifying which one), and supplemented that objection with a detailed privilege log
11 only six months later. *EEOC v. Safeway Store, Inc.*, 2002 U.S. Dist. LEXIS 25200,
12 4-6 (N.D. Cal. Sept. 16, 2002). The Court found no waiver, reasoning that the
13 parties were "both aware that Safeway was asserting the attorney-client privilege
14 and/or the work-product doctrine as to certain documents" from the outset. *Id.* at *7
15 -8.

16 The same reasoning applies here – although the Cohen log contained some
17 mistaken assertions of privilege which were later corrected, all parties were "aware
18 that [Cohen] was asserting the attorney-client privilege and/or the work product
19 doctrine as to certain documents" from the day that Cohen served his first log.
20 Thus, this weighs against waiver. *See also A. Farber & Ptnrs., Inc. v. Garber*, 234
21 F.R.D. 186, 193 (C.D. Cal. 2006) (giving a party that served defective objections an
22 opportunity to serve a revised, corrected log); *EEOC v. Safeway Store, Inc.*, 2002
23 U.S. Dist. LEXIS 25200, 6 (N.D. Cal. Sept. 16, 2002) ("Minor procedural
24 violations, good faith attempts at compliance, and other such mitigating
25 circumstances militate against finding waiver.").

26
27
28

### 3. The size of the production weighs against finding waiver.

*Third*, the "magnitude of the document production" weighs against finding waiver. *See Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). Here, the resulting privilege log was forty pages long, making the proper logging of many documents a daunting task. *See* exh. O. In light of this, the fact that some items were incorrectly logged on earlier iterations is understandable.

### 4. The other circumstances weigh against waiver.

*Fourth*, the "other particular circumstances of this litigation that make responding to discovery unusually easy or . . . unusually hard" weigh in favor of denying this motion. *See Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

First, that the holder of the privilege at issue is the client, Mr. Lin, and not Mr. Cohen weighs against finding waiver. "The focal point of privilege waiver analysis should be the <u>holder's</u> disclosure of privileged communications to someone outside the attorney-client relationship." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) (emphasis added). Here, the holder of the privilege is Wayne Lin, Cohen's client – not Cohen. *See Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 339 (9th Cir. 1996) (stating that the client, Glen Ivy, holds the privilege); *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("the client is the holder of the attorney-client privilege" under California law).

It is undisputed that Wayne Lin has always asserted attorney-client privilege with respect to his communications with Mr. Cohen. In response to a subpoena in this litigation, Mr. Lin and his company, PricePlay, produced a privilege log asserting attorney-client privilege for confidential communications between Mr. Cohen and Mr. Lin. *See* exh. 3. Defendants do not assert that Mr. Lin ever waived this privilege by disclosing the privileged communications to someone outside the

1 attorney-client relationship. *See* Defs. position; *see also Tennenbaum v. Deloitte &*
2 *Touche,* 77 F.3d 337, 341 (9th Cir. 1996) (waiver analysis focuses on whether the
3 "holder's disclosure of privileged communications to someone outside the attorney-
4 client relationship" (emphasis added)). This weighs against finding waiver.

5   In addition, that Cohen is a third party to this litigation, and that the
6 documents in question are several years old, weighs against finding waiver. These
7 facts made it more difficult for Cohen to retrieve the documents, recall the matter,
8 and readily assess the different claims of privilege that applied. Thus, this factor also
9 weighs against finding waiver.

10 **DEFENDANTS' CONCLUSION**

11   For the foregoing reasons, Defendant Google Inc. and AOL LLC's Motion to
12 Compel should be granted. The Court should therefore:

13   Order the production of documents corresponding with privilege log entries
14 1-27, 2-5, 2-6, 2-11, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 9-1, 9-2, 10-1, 10-2, 10-3, 10-4,
15 10-5, 10-6, 10-7, 11-9, 26-4, 26-5, 26-6-7, 26-8-9, 26-10-11, 26-12-14, 26-15-16,
16 26-17-18, 26-19-18, 26-20, 29-1, 29-2, 30-1, 30-2, 30-3, 30-4, 30-5, 30-6-7, 30-10-
17 11, 30-14, 30-15, 30-16, 30-17-19, 30-20, 30-21, 30-22-23, 30-24, 30-25-26, 30-27-
18 32, 30-33-34, 30-35, 30-36-37, 30-38, 30-39-40, 43, 72 and 80; and

19   Order Cohen to pay all costs and relief afforded under Federal Rule of Civil
20 Procedure 37, including the costs and fees incurred by Defendants Google Inc. and
21 AOL LLC related to this motion.

22 **COHEN'S CONCLUSION**

23   For the foregoing reasons, Defendants' motion to compel should be denied.

24

25

26

27

28

```
 1  DATED: August    , 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES. LLP
 2

 3                                    By_____
                                         David A. Perlson
 4

 5                                    Attorneys for Defendant Google Inc. and
                                      AOL LLC
 6

 7  DATED: August 11, 2009            DOVEL & LUNER

 8

 9                                    By_____
                                         Greg Dovel
10

11                                    Attorneys for Neal Cohen and Vista IP Law
                                      Group, LLP
12

13

14

15

16

17

18

19

20

21

22

23

24
```

**Appendix**

| # | Date | Author | Recipient | Description | Privilege(s) Claimed |
|---|---|---|---|---|---|
| 1-27 | 7/31/02 | NMC | WL | Letter concerning the filing of the Supplemental Appeal Brief including confidential communications between client and attorney. | A/C |
| 2-5 | 8/2/01 | NMC | WL | Letter concerning the Final Office Action received 8/2/01 including confidential communications between client and attorney. | A/C |
| 2-6 | 8/13/01 | NMC | WL | Letter concerning the Response after Final filed 8/13/01 including confidential communications between client and attorney. | A/C |
| 2-11 | 3/17/07 | NMC | WL | Letter concerning prosecution representation for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 7-1 | | NMC(on behalf of WL) | HO | Document concerning Japanese patent prosecution representation for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 7-2 | | NMC(on behalf of WL) | HO | Document concerning legal invoices related to Japanese patent application including confidential communications between client and attorney. | A/C |
| 7-3 | | NMC(on behalf of WL) | HO | Document concerning US patent application status related to Japanese patent application including confidential communications between client and attorney. | A/C |
| 7-4 | | NMC(on behalf of WL) | HO | Document concerning Japanese patent application process including confidential communications between client and attorney. | A/C |
| 7-5 | | NMC(on behalf of | HO | Document concerning preliminary US amendment related to Japanese | A/C |

01002.51305/3060451.1

| | | | | | |
|---|---|---|---|---|---|
| | | WL) | | patent application including confidential communications between client and attorney. | |
| 7-6 | | NMC(on behalf of WL) | HO | Document concerning legal invoices related to Japanese patent application including confidential communications between client and attorney. | A/C |
| 7-7 | 4/17/00 | NMC(on behalf of WL) | HO | Letter concerning US patent application related to Japanese patent prosecution. | A/C |
| 9-2 | 12/14/01 | NMC(on behalf of WL) | YPY | Letter concerning Power of Attorney forms and International Preliminary Examination report related to Korean patent application including confidential communications between client and attorney. | A/C |
| 10-1 | 3/21/00 | NMC | WL | Drafts of User Agreement including confidential communications between client and attorney. | A/C |
| 10-2 | 3/21/00 | NMC | WL | Drafts of User Agreement including confidential communications between client and attorney. | A/C |
| 10-3 | 12/13/99 | NMC | WL | Document concerning legal research regarding business models for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 10-4 | 11/10/99 | NMC | WL | Draft of licensing document for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 10-5 | 9/28/99 | NMC | WL | Draft of licensing document for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 10-6 | 9/26/99 | NMC | WL | Draft of licensing document for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 10-7 | 9/24/99 | NMC | WL | Draft of licensing document for the purpose of legal advice and including confidential | A/C |

01002.51305/3060451.1

| | | | | communications between client and attorney. | |
|---|---|---|---|---|---|
| 11-9 | 2/10/00 | NMC(on behalf of WL) | Taiwanese attorney | Document related to Taiwanese patent application. | A/C |
| 26-4 | 7/2/01 | HO | NMC(on behalf of WL) | Letter concerning publication of Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-5 | 3/2/01 | JT | NMC(on behalf of WL) | Email concerning Japanese patent prosecution process for the purpose of legal advice and including confidential communications between client and attorney. | A/C |
| 26-6-7 | 2/28/01 | NMC(on behalf of WL) | HO | Document concerning Japanese patent prosecution process status including confidential communications between client and attorney. | A/C |
| 26-8-9 | 7/12/00 | NMC(on behalf of WL) | HO | Document concerning legal invoice re Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-10-11 | 7/4/00 | HO | NMC(on behalf of WL) | Document concerning legal invoice re Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-12-14 | 7/5/00 | HO | NMC(on behalf of WL) | Document concerning filing of Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-15-16 | 6/22/00 | HO | NMC(on behalf of WL) | Letter concerning filing of Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-17-18 | 6/21/00 | NMC(on behalf of WL) | HO | Document concerning filing deadlines for Japanese patent application including confidential communications between client and attorney. | A/C |

| | | | | | |
|---|---|---|---|---|---|
| 26-19 | 4/21/00 | NMC(on behalf of WL) | HO | Letter concerning filing of Japanese patent application including confidential communications between client and attorney. | A/C |
| 26-20 | 4/21/00 | HO | NMC(on behalf of WL) | Letter concerning filing of Japanese patent application including confidential communications between client and attorney. | A/C |
| 29-1 | 9/13/00 | NMC | WL | Draft of license agreement including confidential communications between client and attorney. | A/C |
| 29-2 | 9/13/00 | NMC | WL | Draft of license agreement including confidential communications between client and attorney. | A/C |
| 30-1 | 10/13/04 | Honesty & Patent | PJE (on behalf of WL) | Email concerning logistical details re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-2 | 10/11/04 | Honesty & Patent | PJE (on behalf of WL) | Email concerning representation re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-3 | 10/13/04 | PJE (on behalf of WL) | Honesty & Patent | Email concerning representation re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-4 | 10/6/04 | Se-Chang Kang , Korean patent counsel | NMC (on behalf of WL) | Letter concerning deadlines and costs re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-5 | 10/19/02 | NMC (on behalf of WL) | YPY | Email concerning representation re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-6-7 | 10/18/02 | NMC | YPY, WL | Email concerning representation re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-10-11 | 10/17/02 | YPY | NMC(on behalf of WL) | Letter concerning file transfer of Korean patent application including confidential communications between client and attorney. | A/C |
| 30-14 | 7/29/02 | YPY | NMC(on behalf of | Letter concerning logistical details re Korean patent application including confidential | A/C |

01002.51305/3060451.1

| | | | | | |
|---|---|---|---|---|---|
| | | | WL) | communications between client and attorney | |
| 30-15 | 7/29/02 | YPY | NMC(on behalf of WL) | Letter concerning priority documents re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-16 | 4/17/02 | YPY | NMC(on behalf of WL) | Letter concerning public disclosure of Korean patent application including confidential communications between client and attorney. | A/C |
| 30-17-19 | 12/29/01 | YPY | NMC(on behalf of WL) | Letter concerning filing of Korean patent application including confidential communications between client and attorney. | A/C |
| 30-20 | 12/26/01 | Honest & Patent | NMC(on behalf of WL) | Letter concerning filing of Korean patent application including confidential communications between client and attorney. | A/C |
| 30-21 | 12/25/01 | YPY | NMC(on behalf of WL) | Letter concerning preparation of filing Korean patent application including confidential communications between client and attorney. | A/C |
| 30-22-23 | 12/24/01 | NMC(on behalf of WL) | YPY | Document concerning preparation of filing Korean patent application including confidential communications between client and attorney. | A/C |
| 30-24 | 12/14/01 | NMC(on behalf of WL) | YPY | Letter concerning Power of Attorney forms re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-25-26 | 12/14/01 | NMC(on behalf of WL) | YPY | Letter concerning filing of Korean patent application including confidential communications between client and attorney. | A/C |
| 30-27-32 | 12/9/01 | NMC(on behalf of WL) | YPY | Email concerning preparation of filing Korean patent application including confidential communications between client and attorney. | A/C |
| 30-33-34 | 11/15/01 | YPY | NMC(on behalf of WL) | Letter concerning filing of Korean patent application including confidential communications between client and attorney. | A/C |

01002.51305/3060451.1

| | | | | | |
|---|---|---|---|---|---|
| 30-35 | 11/15/01 | YPY | NMC(on behalf of WL) | Email concerning Korean patent application process including confidential communications between client and attorney. | A/C |
| 30-36-37 | 11/15/01 | YPY | NMC(on behalf of WL) | Letter concerning legal costs re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-38 | 11/14/01 | NMC | Honest & Patent | Email concerning representation re Korean patent application including confidential communications between client and attorney. | A/C |
| 30-39-40 | 11/1/01 | Honest & Patent | NMC(on behalf of WL) | Letter concerning Korean patent application including confidential communications between client and attorney. | A/C |
| 43 | 10/06/05 | NMC | WL | Document relating to draft of patent drawings including confidential communications between client and attorney. | AC |
| 72 | 03/29/07 | JLL | NMC | Email concerning filing of patent documents including confidential communications between client and attorney. | A/C |
| 80 | 03/30/07 | NMC | VLS, JLL | Email concerning draft of claims including confidential communications between client and attorney. | A/C |

01002.51305/3060451.1