# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PERFORMANCE PRICING, INC.,

    Plaintiff,

vs.                             No. 2:07-CV-432(LED)

GOOGLE, INC., AOL LLC,
MICROSOFT CORPORATION,
YAHOO! INC., IAC SEARCH
& MEDIA, INC., and A9.COM,
INC.,

    Defendants.

---

DEPOSITION OF NEAL M. COHEN

Irvine, California

Wednesday, February 11, 2009

Reported by:
DENISE BARDSLEY
CSR No. 11241

JOB No. 105088

EXHIBIT F
PAGE 44

1  to presume for right now, for the sake of simplicity,
2  the '253 is the one I worked on and take your
3  representation that you have the information that
4  shows that I did that.
5      Q    Yeah.
6      A    If that's true, it might have even been this
7  '253 patent --
8      Q    Okay.
9      A    -- that I talked to him about.
09:57 10    Q    Okay. So in the last year, when you've
11 spoken to him, why -- have you billed him for your
12 time, Mr. Lin?
13     A    I believe I did. I didn't say it was in the
14 last year, though.
15     Q    Okay. You said -- I'm kind of moving on to a
16 different set of communications. I understand that
17 wasn't clear.
18          You previously indicated that within the past
19 year you've had several attorney-client communications
09:57 20 with Mr. Lin, right?
21     A    I didn't say "several," but I have had some,
22 yes.
23     Q    And have you charged Mr. Lin for those
24 communications?
25     A    I don't recall, but I don't believe I did.

1  Q   Okay.  Why not?
2  A   I'm not going to answer that question because
3  I believe that would reveal attorney-client privileged
4  information.
5  Q   How does that involve revealing attorney-
6  client --
7  A   Well, I believe any communications I have had
8  with Mr. Lin have been attorney-client privileged, and
9  what you're asking me now is why I didn't bill him for
09:58 10  my communication?
11  Q   Yes.
12  A   I think that is a privileged information.
13  Q   How does that represent an attorney-client
14  privilege?
15  A   I'm claiming that as privileged information
16  and I'm going to refuse to answer based on that claim.
17  Q   Okay.  Well, we can address that at a later
18  point.
19      Have you worked on any litigation involving
09:58 20  Mr. Lin or any of his entities that he owns?
21  A   Have I worked on any litigation?  Again, just
22  to give your word "work" a broad definition, I mean, I
23  consider what I'm doing right now work even though I'm
24  not getting paid for it.  This is related to his
25  entity, so, in that respect, yes.

20

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855           EXHIBIT  F
                       PAGE     65

```
 1    Q    Okay.
 2    A    I know, if you want to ask a more specific
 3  question, maybe --
 4    Q    Sure.
 5         Well, separate and apart from appearing at
 6  the deposition today, have you done any work for
 7  Mr. Lin in connection with any litigation brought by
 8  Mr. Lin or any of his entities?
 9    A    Not that I know of, no.
10    Q    Okay.  Had you prepared any materials in
11  anticipation of any litigation for Mr. Lin?
12    A    I believe so, yes.
13    Q    Okay.  Which ones would those be?
14    A    Specifically the documents?
15    Q    Yes.
16    A    I think almost everything I did for him was
17  prepared in anticipation of litigation when I was
18  working for him.
19    Q    So in your view, preparing patent prosecution
20  documents is done in anticipation of litigation?
21    A    When you say "patent prosecution documents,"
22  do you mean, for example, drafting the patent
23  application?
24    Q    Sure.
25    A    It can be.  In a sense it is, yes.
```

1  Q   Well -- okay.  So it is your position that
2  the documentation you prepared in connection with the
3  prosecution of patents for Mr. Lin was done in
4  anticipation of litigation?
5  A   In general, they can be.  In my case, if
6  you're asking me when I was preparing the patent
7  application for Mr. Lin, was that done in anticipation
8  of litigation --
9  Q   That's my question.
10:01 10  A   Is that the specific question you're asking?
11  Q   Yes.
12  A   I believe that it was, yes.
13  Q   What litigation?
14  A   There was no litigation in place at the time.
15  Q   Well, what litigation was it done in
16  anticipation of?
17  A   It was in anticipation of some litigation.
18  Q   Against who?
19  A   I don't know that there was a specific entity
10:01 20  in mind at the time.
21  Q   Okay.
22      MR. ANDERSON:  Microsoft would request that
23  Mr. Cohen and plaintiff's counsel reconsider their
24  assertion of work product in light of that statement.
25  BY MR. PERLSON:

EXHIBIT F
PAGE 97