# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PERFORMANCE PRICING, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., AOL LLC, MICROSOFT CORPORATION, YAHOO! INC., IAC SEARCH & MEDIA, INC., and A9.COM, INC., <br><br> Defendants. | Case No. 2:07-cv-432 (LED) <br><br> **JURY TRIAL DEMANDED** |

## Plaintiff Performance Pricing, Inc.'s responses to Defendants' *first* set of interrogatories

Plaintiff Performance Pricing, Inc. ("Performance Pricing") provides the following objections and responses to Defendants' first set of interrogatories.

**Objections to Definitions and Instructions**

Performance Pricing objects to Defendants' definition of the terms "Performance Pricing," "you," "your," and "Plaintiff" on the ground that these terms are redefined far beyond any ordinary or reasonable definition to include many separate and disparate concepts. The definition proposed by Defendants creates proposed discovery that exceeds the scope of permissible discovery, which is limited to "any matter, not privileged that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The extreme breadth also means that proposed discovery using these terms imposes a burden or expense that outweighs its likely benefit. Performance Pricing will interpret each of these terms to mean or refer to Performance Pricing and its officers, managers, and employees.

price to be determined dependent on a performance of the buyer while participating in a Price-Determining-Activity (PDA), said acknowledgement being communicated over the global communications network; c) determining the performance of the buyer based upon data received over the global communications network; and) assign a price to the product, said price being scaled to the performance of the buyer.

31. The system of claim 30, wherein the PDA comprises computer-executable code sent to the buyer over the global communications network.

32. The system of claim 31, wherein the server is further programmed to process payment information of the buyer communicated over the global communications network.

33. The system of claim 30, wherein the server is further programmed to determine a price range prior to determining the performance of the buyer, said price range having a lower limit associated with a best performance, and an upper limit associated with a worst performance, and wherein the server is further programmed to assign the price to the product within the price range.

Non-obviousness and unpredictability:

Each of these improvements was a non-obvious and unpredictable improvement, addition of functionality, variation or upgrade.

Unexpected results, synergies, improved results and new results:

Conventional wisdom is that in a commercial transaction, the seller has a strong interest in closing the transaction at a higher sale price so that the seller can generate more revenue. In particular, the seller benefits each time that the buyer buys an item for a higher sale price because it increases the seller's income.

==The invention describes a method for conducting business that allows buyers to reduce the price of the selected product or service based on the buyer's performance during a collateral activity.== The ultimate price is within an agreed upon range, but is determined based upon the buyer's performance in the collateral activity. Since the seller has an interest in maximizing the sale price, it was counter-intuitive to implement a system whereby the seller sells the product or service at a price that is determined based upon the buyer's performance in a collateral activity, instead of the highest price within the range. It is an unexpected benefit and synergy of the invention that it produces benefits for both seller and buyer.

Another unexpected benefit and synergy of the invention is that it produces benefits for both the buyer and seller in an auction environment as well. The conventional wisdom, that the seller wants to maximize sale price, applies in the context of auctions as well. In an auction, the seller has an interest in increasing the price of bids so that the seller can generate more revenue. Common sense dictates that the seller should sell the product or service at a price equal to the highest bid. The invention, in contrast, discloses a method by which the buyer's price in the auction is determined by the buyer's performance in a collateral activity and performance in the auction. It was counter-intuitive to develop a system in which the price is determined, using an auction, based on a collateral activity.

The invention produces improved results by encouraging buyers to improve their performance in the collateral activity. By reducing the price for good performance, the seller can encourage buyers to focus on, and improve their performance in, the collateral activity. In the internet advertising context, this produces great unexpected synergies and benefits. Prior to the use of this invention, internet advertisements were often sold at an auction to the highest bidder. The buyer that bid the highest for the words "flowers," for example, would win the advertising

spot for the word "flowers." It did not matter whether or not the buyer's advertisement had anything to do with flowers at all. Thus, a very low quality advertisement for "flowers" might place in the advertising spot by virtue of submitting the highest price offer. The invention discloses a method for adjusting the buyer's price based on the performance of the buyer in a collateral activity, instead of just based on price. By making the collateral activity the quality of the advertisement, sellers of internet advertising space could create an incentive for buyers to improve the quality of their advertisement. This would produce synergistic and unexpected benefits including making the search experience better for the user, because the advertisements would be more relevant, thereby improving the search results, which would in turn increase the number users using the search engine. This ability to create an incentive for buyers to perform well in the collateral activity was an unexpected benefit of the invention.

**Interrogatory Number 5:**

> For each limitation of each ASSERTED CLAIM of the '253 PATENT, identify, in claim chart form, the portions of the specification YOU contend provide WRITTEN DESCRIPTION support, an ENABLING DISCLOSURE, and a disclosure of the BEST MODE contemplated by the inventor.

**Response:**

Performance Pricing objects to this interrogatory to the extent it incorporates any of Defendants' definitions or instructions that are objected to above, for the reasons stated above.

Performance Pricing objects to the extent this interrogatory calls for the disclosure of attorney opinions, the identity of expert consultants, consultant opinions, or other information subject to the work product privilege, expert disclosure limitations, or the attorney-client privilege.

Performance Pricing objects to this request to the extent that it calls for premature disclosure of documents that relate to or disclose expert opinions.